*R. J. GREGORY and others v. W. G. MORISEY and others.

*Clerk and Master—Liability of Sureties on Official Bond—Commissions.*

1. Where a clerk and master sold certain land under decree of a Court of Equity and had collected only a part of the purchase money, when in 1868, under C. C. P. § 142, he delivered to his successor in office (the clerk of the Superior Court) all the papers, &c., in the case ; and thereupon, by consent of the parties, the papers, &c , were re-delivered to him to be proceeded with and collected ; *It was held,* that upon his delivery of the papers, &c., to the Superior Court clerk, his official duties, powers and liabilities ceased, and the sureties on his official bond were not liable for anything thereafter done by him.

2. Where, in such case, gold bonds had been taken for the purchase money and the clerk and master had collected a portion of them, part in currency and part in gold by consent of parties, who received from him whatever he collected, whether currency or gold ; *It was held,* that from the whole amount of his receipts while clerk and master should be deducted the amount of his commissions and his disbursements during that time ; that the sureties on his bond were liable for the amount of the balance due (with twelve per cent interest from the date of the summons) in currency, with the addition of the present premium on gold, on that part of the said balance due on his gold collections and disbursements.

3. In such case, the clerk and master will be liable for the amount due from the sureties as above, and also for his subsequent collections, less the amount of his disbursements and commissions with twelve per cent interest from date of summons.

---

*Faircloth, J., having been of counsel, did not sit on the hearing of this case.

4. The rule that a dishonest agent should not be allowed commissions is too rigid for application in this case, there being no facts stated which would make such rule applicable.

CIVIL ACTION, on an Official Bond, tried at Spring Term, 1878, of WAYNE Superior Court before *Kerr, J.*

This action was brought upon the official bond of the defendant, Morisey, as clerk and master of the late Court of Equity, in which it was alleged that he collected certain moneys, the proceeds of sale of real estate, and failed to pay the same to the parties interested, and the defendant sureties insisted that they were not liable for such default. The case was referred to F. A. Woodard, Esq., who reported .as follows:—

That in February, 1866, the defendant, Morisey, was duly appointed clerk and master in equity for Wayne county, and executed a bond with the other defendants as .sureties; that at Fall Term, 1866, a bill in equity was filed by the plaintiffs against John B. Griswold and others to sell real estate belonging to the parties thereto, and a decree was made directing said Morisey to sell the same upon .a credit of six, twelve and eighteen months for gold bonds for the purchase money. The sale was accordingly made .on the 1st of January, 1867, for $33,750 in gold, his report was confirmed, and he was directed to collect the money .and pay over to the parties to said suit; that up to the 31st .of October, 1868, he collected $29,873.66 in currency and paid to said parties $29,015.30 thereof; and up to same .date, he collected $1,200 in gold and paid to said parties .$1,180 thereof; that after his office was abolished in 1868, he delivered to the clerk of the Superior Court of said .county all the papers belonging to the office, including the papers in the cause in which R. J. Gregory and others were plaintiffs and John B. Griswold and others were .defendants; and that at the written request of the at-torneys for the parties to said cause, the clerk of the Su-

perior Court redelivered the papers therein to Morisey, and at the ensuing term of the Court the said attorneys, when said cause was called, informed the presiding Judge that they had agreed for Morisey to retain the papers and finish the duties, with which he had been charged in respect thereto, to which arrangement the Court assented; and that after the papers were re-delivered to Morisey, he collected in currency the balance due on the bonds, amounting to $17,724.58,—the first collection being made Feb. 1st, 1869, and the last, Dec. 2d, 1869—and paid to said parties the sum of $14,267.80

Upon these facts the referee found as conclusions of law: —That the defendant sureties were liable for the gold value of the currency in the hands of Morisey, on the 31st of October, 1868, the date of his last collection before delivering the papers to the clerk of the Superior Court, less the sum of $330 allowed as commissions, but that they are not liable for any sum collected by Morisey after the delivery of the papers to the clerk as aforesaid; and that Morisey is liable for the whole amount of currency collected by him, less the amounts paid to said parties and the sum of $507 commissions for making the sale and collection.

To the conclusions of law the plaintiffs filed exceptions and insisted that the sureties were liable for the full amount of the currency collected and twelve per cent damages, instead of the gold value as held by the referee; that Morisey was not entitled to commissions because he wasted the money of the plaintiffs; that the sureties were not discharged from their liability by any act of the Court or of the attorneys on the facts found; and in any event they insist that judgment for the full amount of currency collected by Morisey up to the 31st of October, 1868, and interest at twelve per cent should be rendered in their favor. Upon the hearing in the Court below the plaintiffs' exceptions were sustained and the referee's report reformed in accordance therewith. Judgment. Appeal by defendants.

*Messrs. Gilliam & Gatling,* for plaintiffs.
*Messrs. H. F. Grainger* and *A. K. Smedes,* for defendants.

READE, J.   Our statute made it the duty of the defendant clerk, Morisey, immediately upon the qualification of his successor, to deliver to him " all the records, books, papers, moneys and property" of his office, and made his failure to do so a misdemeanor.   Bat. Rev. ch. 17, § 142.   This the said defendant did on or before 31st of October, 1868.   It did not require the consent of parties, or the order or consent of the Court to authorize him to do it.   It was his independent official duty.   As soon as done, his official duties, powers and liabilities ceased ; except his liability for what was in the past.   And it follows that the liabilities of the defendants his sureties ceased also.

It is however insisted that inasmuch as the parties directed the defendant's *successor* to redeliver the papers in controversy back to the defendant Morisey and he did redeliver them back with the sanction of the Court to be proceeded with and collected, as he would have done if his term had not expired, that fact *quo ad hoc* reinstated the defendant Morisey and his sureties in their liabilities as if he had never delivered the papers at all.   Suppose that were so, suppose the defendant Morisey never had delivered the papers to his successor, still his sureties would not be liable for what he did *after* his term of office expired.   They would only be liable for the damage sustained by his *failure* to deliver to his successor.   And in fixing that damage it may be that it would be proper to consider the value of the papers, their collectibility, and that he did in fact collect them.   But the action of the parties and of the Court and of the successor to Morisey in redelivering the papers to him had no such effect.   The effect was to make him a *new man* with whom the defendant's sureties had no connection. Their liability was for him as clerk and master ; and after

he had ceased to be such, neither the consent of the parties, nor the sanction of the Court, nor the act of his successor in redelivering, nor all combined, could make him clerk and master again.

The effect of the action of the parties in having the papers redelivered to Morisey was to make him their agent; and the effect of the sanction of the Court, if it had any force at all, may have been to make him a commissioner of the Court; but the defendant's sureties were not affected at all. It is indeed insisted that there was no "delivery" and "re-delivery" at all, but that the acts were concurrent and colorable, not for the purpose of complying with the law, but for evading it. And therefore the defendant's sureties remained bound. There is not the slightest foundation for this. The facts are clearly found that there was a delivery of all the effects of his office by Morisey to his successor, and a redelivery by his successor to him by direction of the parties. The defendant's sureties are in no way bound for anything done after the delivery by Morisey to his successor.

We are next to consider the liabilities of defendant Morisey and sureties before and at the time of his delivering up his office to his successor. From account "A" reported by referee, it appears that up to October the 31st, 1868, he had collected $29,873.66 in currency and $1200.00 in gold, and that he had paid out $29,015.30 in currency and $1180.00 in gold. And the referee allows him $330 for commissions. Add the commissions to the expenditures and deduct the whole amount from the whole amount of receipts, without regard to gold and currency, and the remainder with twelve per cent interest from the date of summons up to this time and it will show the amount due at this time, which may be satisfied in currency with the premium on $20 of gold at this time added. This will cover all the liabilities of the defendant's sureties. It will not however cover all the liabili-

ties of the defendant Morisey. He will be liable for this amount, and for all his subsequent collections in the amounts as collected without regard to any difference between gold and currency at the time of collection. And he will be credited with the amounts paid out in the same way, and the amount allowed by the referee for his commissions. And the remainder with twelve per cent interest from the date of summons will be the amount now due in currency.

The contract was solvable in gold, but it seems that by consent of parties the defendant Morisey collected either gold or currency, and whatever he received, gold or currency, the creditor received from him. We suppose that when currency was received it was at its then depreciation, so that more than the nominal amount of the debt was received in currency. And as currency has appreciated as compared with gold, the defendant Morisey insists that if he is required to pay the amount in currency *now* which he received in currency *then*, the creditor will get more than the value of his debt. Grant that to be so, yet who is to profit by the appreciation of the currency? The defendant ought to have paid it over as soon as he collected it. It was not his money, but the creditors'. If it increased in value, the creditor is entitled to the increase. The defendant who held it wrongfully, or even if he held it without positive wrong, is not entitled to make profit out of his principal's money, for his own advantage. And he cannot complain if he is required to pay over the very thing which he received.

The plaintiff objects that the defendant ought not to be allowed commissions because he was a dishonest agent. That is the true rule, but it is too rigid to fit this case. The whole amount of commissions allowed amounts to about the sum which he retained when he delivered over the papers to his successor. And if we assume, as is probable that he had knowledge that the parties would engage him to col-

lect the whole amount, as they did do, there may have been no moral delinquency. And his failure to pay over the balance of his subsequent collections may be without other fault than a simple failure to pay. The facts which would make the rigid rule applicable are not stated, if they exist. The clerk of this Court will make the calculations and report, for which he will be allowed $20 and there will be judgment here accordingly. The allowance to the referee below of $100 will be divided between the parties. The costs in this Court will be equally divided between the parties.

PER CURIAM. Judgment modified.